UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LA SHAWN BROWN,

    Plaintiff,

v.                              Case No. 1:06-cv-814
                              Hon. Gordon J. Quist

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

**REPORT AND RECOMMENDATION**

        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI).

        Plaintiff was born on December 2, 1971 and completed the 11th grade (AR 72, 110).[1] Plaintiff alleges that she has been disabled since July 5, 2002 (AR 72). She had previous employment as a factory worker (packer), a cashier and a residential instructor (assisting disabled people) (AR 105). Plaintiff identified her disabling condition as asthma (AR 104). After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying these claims on May 26, 2005 (AR 17-24). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

**I.  LEGAL STANDARD**

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence.  42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).   A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only.  This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record.  *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence.  *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits.  A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d

918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health*

3

*and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993). *See Brooks v. Sullivan*, No. 90-5947, 1991 WL 158744 at *2 (6th Cir. Aug. 14,1991) ("[t]o establish medical eligibility for SSI, plaintiff must show either that he was disabled when he applied for benefits . . . or that he became disabled prior to the Secretary's issuing of the final decision on this claim . . . 20 C.F.R. §§ 416.335, 416.330").

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. Following the five steps, the ALJ initially found that plaintiff was insured for benefits through the date of the decision and that she had not engaged in substantial gainful activity since the alleged onset of disability (AR 22). Second, the ALJ found that she suffered from severe impairments of an affective disorder, depression and asthma (AR 23). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 23).

The ALJ decided at the fourth step that:

> The claimant has the residual functional capacity to perform light work. The claimant can lift and carry up to 20 pounds occasionally and ten pounds frequently, stand and/or walk up to two hours in an eight-hour workday, and climb, balance, stoop, kneel, and crouch occasionally. She should avoid concentrated exposure to extremes of cold and heat, humidity, fumes, odors, dusts, gases, and poor ventilation. She is limited to simple repetitive tasks.

(AR 23). The ALJ found that plaintiff "has no past relevant work" as defined in the regulations, 20 C.F.R. §§ 404.1565 and 416.965 (AR 21, 23).[2] The ALJ also found that plaintiff's allegations regarding her functional limitations were partially credible (AR 23).

---

[2] Plaintiff points out that from 1998 through 2002, she worked for 17 different employers and earned an average of about $3,000.00 per year (AR 91-93).

At the fifth step, the ALJ determined that plaintiff had the RFC to perform a range of light work (AR 23). The ALJ found that plaintiff could perform a significant number of jobs in the regional and the national economy, such as assembler (1,900 jobs at the light work level) and stem mounter or final assembler (8,100 jobs at the sedentary work level) (AR 22-23). Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social Security Act and entered a decision denying benefits (AR 23-24).

## III. ANALYSIS

Plaintiff raised two issues on appeal.

> **A.  The total failure to consider the limitations from plaintiff's vision impairment on her ability to work requires a remand for a new hearing.**

Plaintiff suffers from exotropia, which is defined as "strabismus [i.e., deviation of the eye which the patient cannot overcome] in which there is permanent deviation of the visual axis of one eye away from that of the other, resulting in diplopia [i.e., the perception of two images of a single object]. *Dorland's Illustrated Medical Dictionary* (28th Ed.) at 475, 593, 1584. Larry Gerbens, M.D., treated plaintiff for this condition and noted in September 2001 concerns that plaintiff "cannot see" and that her "vision fluctuates" (AR 283, 443). The record reflects that plaintiff underwent surgery for this condition on March 5, 2004, performed by Laura Piippo, M.D., which consisted of left medial rectus resection 7.0 mm with one-third tendon upward placement, and, left lateral rectus resection 8.0 mm with one-third tendon inferior placement (368-82). Medical records reflect that on March 11, 2004, plaintiff appeared "to be well" and "no concerns noted" (AR 374). However, on August 31, 2004, plaintiff stated that she "feels the muscles have gone back" and was concerned about the "spot" where the surgery was performed (AR 370). The exotropia is not

referenced in the RFC assessment prepared by the DDS physician on October 7, 2003, which states plaintiff has no established visual limitations (AR 355-62). The ALJ's decision does not address the exotropia, even though the condition is listed as an alleged severe impairment in both the pre-hearing statement of facts and plaintiff's hearing memorandum (AR 17-24, 177, 179-81).

The Commissioner must provide a statement of evidence and reasons on which the decision is based. *See* 42 U.S.C. § 405(b)(1). While it is unnecessary for the ALJ to address every piece of medical evidence, *see Heston*, 245 F.3d at 534-35, an ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). Here, the ALJ has failed to discuss plaintiff's exotropia, a visual condition that was of sufficient severity to require corrective surgery. The record suggests that the surgery may not have resolved the condition. Because the ALJ failed to address the issue, the court is faced with cryptic medical records which appear to show reports of decreased visual acuity and double vision prior to the surgery (AR 380-82). To resolve this issue on the present record would require the court to weigh the evidence of exotropia and make credibility determinations with respect to plaintiff's alleged visual impairment. These actions fall outside of the scope of the court's review of the ALJ's decision under § 405(g). *See Brainard*, 889 F.2d 679, 681 (6th Cir. 1989).

Accordingly, this matter should be remanded to the Commissioner for an evaluation of plaintiff's alleged visual impairment of exotropia.

> **B. The partial failure to consider the limitations from plaintiff's depression on her ability to work requires a remand for a new hearing.**

Next, plaintiff contends that the ALJ failed to properly evaluate her claim of depression, by omitting the third step of the "special technique" used to evaluate mental impairment under 20 C.F.R. § 416.920a. The regulations provide in pertinent part as follows:

> (b) Use of the technique.
>
> (1) Under the special technique, we must first evaluate your pertinent symptoms, signs, and laboratory findings to determine whether you have a medically determinable mental impairment(s). *See* § 416.908 for more information about what is needed to show a medically determinable impairment. If we determine that you have a medically determinable mental impairment(s), we must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document our findings in accordance with paragraph (e) of this section.
>
> (2) We must then rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c) of this section and record our findings as set out in paragraph (e) of this section.

20 C.F.R. § 416.920a.

The method for rating a claimant's "degree of functional limitation" is set forth in 20 C.F.R. § 416.920a(c), which provides in pertinent part:

> When we rate the degree of limitation in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

After rating the degree of functional limitations, the ALJ determines the severity of the limitations, i.e., whether it is "severe," and whether "it meets or is equivalent in severity to a listed mental disorder." 20 C.F.R. § 416.920a(d)(1)-(2). If the claimant has a "severe mental

7

impairment" that neither meets nor is equivalent to a listed impairment, then the ALJ will assess the claimant's residual functional capacity. 20 C.F.R. § 416.920a(d)(3). Finally, the regulations require that the ALJ's "written decision must incorporate the pertinent findings and conclusions based on the technique." 20 C.F.R. § 416.920a(e)(2).

Plaintiff observes that the ALJ complied with part of the special technique by determining that her depression was a medically determinable impairment, rating the broad categories of the degree of functional limitation, and finding that her depression did not meet or equal a listed impairment (AR 20). However, plaintiff contends that the ALJ failed to complete the required mental RFC assessment, because he failed to make "a detailed assessment of the individual's capacity to perform and sustain mental activities which are critical to work performance" pursuant to Social Security Ruling (SSR) 85-16.[3] The considerations in this assessment include the claimant's ability "to understand, to carry out and remember instructions, and to respond appropriately to supervision, coworkers, and customary work pressures in a work setting." *Id.* In addition, "all limits on work-related activities from the mental impairment must be described in the mental RFC assessment." *Id.* Plaintiff contends that the ALJ failed to make such a "detailed assessment" by relying on a physical RFC assessment to identify her ability to perform work related activities and merely stating that plaintiff "is limited to simple repetitive tasks" (AR 21).

In his decision, the ALJ found that plaintiff's depressive disorder was recently diagnosed in October 2004 (approximately two months before the administrative hearing) and

---

[3] SSR's "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency. 20 C.F.R. § 402.35(b)(1).

plaintiff had been prescribed anti-depressant medications (AR 20).[4] The ALJ made the following findings with respect to plaintiff's functional limitations pursuant to 20 C.F.R. §§ 416.920a(c) and (e). First, plaintiff has mild restrictions in activities of daily living (AR 20). In support of this finding, the ALJ noted that plaintiff was a single parent raising three children, had good hygiene, is independent in self care, shops, and watches movies with her children (AR 20). Second, plaintiff has moderate difficulties in social functioning (AR 20). In this regard, the ALJ observed that although plaintiff fights with a boyfriend, she relates satisfactorily with medical providers, and visits and talks with relatives (AR 20). Third, plaintiff has moderate difficulties in maintaining concentration, persistence or pace (AR 20). The ALJ reached this conclusion because plaintiff answered questions well at the hearing, and her psychiatrist found her fairly cooperative, with fair insight and judgment (AR 20). Fourth, the ALJ found that plaintiff had one episode of deterioration or decompensation, not of extended duration and not in a work or work-like setting (AR 20). After finding that plaintiff did not meet the requirements of Listing 12.04 (affective disorders) (AR 20, 23), the ALJ evaluated plaintiff's RFC based upon the limitations as set forth in the physical RFC assessment (355-62), with the addition of the non-exertional limitation that "[s]he is limited to simple repetitive tasks" (AR 21).

       Defendant contends that this is an appropriate assessment of plaintiff's mental RFC. The court agrees with the general proposition that limiting a claimant to simple repetitive tasks would be consistent with some functional limitations in concentration, persistence and pace. *See, generally, Smith v. Halter*, 307 F.3d 377, 378-79 (6th Cir. 2001) (where ALJ found that claimant

---

[4] This recent diagnosis could explain the absence of a DDS physician's mental RFC assessment in the administrative record.

"often" suffered problems with concentration, hypothetical question limiting claimant to jobs that are routine and low stress and which do not involve intense interpersonal confrontations appropriately addressed that impairment). However, in the present case, the ALJ's decision did not provide an explanation to support the conclusion that plaintiff's mental RFC limited her to simple repetitive tasks. The ALJ acknowledged that plaintiff had moderate difficulties in both social functioning, and the ability to maintain concentration, persistence or pace. The ALJ also found that plaintiff experienced one episode of deterioration. However, the ALJ did not explain the evidence which led him to conclude that plaintiff's mental RFC is limited to performing simple repetitive tasks. "It is the responsibility of . . . the administrative law judge (ALJ) . . . to identify the pertinent evidence from medical and nonmedical reports and to make findings as to the individual's ability to perform work-related activities (RFC)." SSR 85-16, 1985 WL 56855 at *2. Accordingly, this matter should be remanded to the Commissioner for a re-evaluation of plaintiff's mental RFC.

### IV. Recommendation

I respectfully recommend that the Commissioner's decision be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for (1) an evaluation of plaintiff's alleged severe impairment of exotropia, and, (2) a re-evaluation of plaintiff's mental RFC.

Dated: January 7, 2008                            /s/ Hugh W. Brenneman, Jr.
                                                  HUGH W. BRENNEMAN, JR.
                                                  United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).