UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LaSHAWN BROWN,

    Plaintiff,

v.                                          Case No. 1:06-cv-814
                                           HON. GORDON J. QUIST
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

**OPINION AND ORDER APPROVING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

       The Court has reviewed the Report and Recommendation filed by the United States Magistrate Judge in this action on January 7, 2008. The Report and Recommendation was duly served on the parties, and the Court has received objections from Defendant. In accordance with 28 U.S.C. § 636(b)(1), the Court has performed *de novo* consideration of those portions of the Report and Recommendation to which objection has been made. The Court now finds the objections to be without merit.

**Facts**

       Plaintiff, LaShawn Brown ("Brown"), applied to the Social Security Administration for disability benefits. In her application, she listed her disabling condition as asthma. (AR at 104.) Brown's claim was administratively denied, and an Administrative Law Judge ("ALJ") reviewed her claim *de novo*. As part of the review process, numerous medical reports were provided to the ALJ. On December 20, 2004, the ALJ held a hearing concerning Brown's eligibility for disability benefits. Prior to the hearing, Brown completed a Pre-Hearing Statement of Facts listing her

impairments as asthma, depression, and exotropia. (AR at 177.) The Hearing Memorandum also identified Brown's impairments as asthma, depression, and exotropia. (AR at 179.) Exotropia is a medical condition in which there is a permanent deviation of the visual axis of one eye away from that of the other, which can result in the perception of two images as a single object. *Dorland's Illustrated Medical Dictionary* (28th Ed.) at 475, 593, 1584. Brown was first treated for this condition in September 2001 after she complained that her "vision fluctuates." (AR at 283.) Brown underwent surgery for this condition on March 5, 2004. (AR at 368.) Medical records reflect that on March 11, 2004, Brown appeared "to be well" and no concerns were noted. (AR at 374.) On August 31, 2004, Brown stated that she "feels muscles have gone back" and was "concerned about 'spot' where [surgery] was performed." (AR at 370.) The doctor noted that the exotropia may be recurring and that further surgery may be needed if it continued to bother her. (AR at 370.)

At the hearing, neither Brown nor the ALJ mentioned her exotropia. On May 26, 2005, the ALJ issued his decision finding that Brown was not disabled because she was capable of performing other work that existed in the national economy. (AR 18-24.) The ALJ determined that Brown had a depressive disorder and asthma, conditions "severe" within the meaning of the Social Security Regulations. (AR at 19.) Therefore, the ALJ was charged with determining Brown's Residual Functional Capacity ("RFC") to assess her ability to perform work. The ALJ referenced a RFC prepared by Dr. Mohiuddin on October 7, 2003, finding Brown capable of lifting/carrying 10 pounds frequently and 20 pounds occasionally. (AR at 19.) This RFC also found Brown capable of standing/walking for two hours in an eight-hour day and capable of sitting for six hours in an eight-hour day. (AR at 19.) Finally, the RFC noted that due to her asthma, Brown should avoid concentrated exposure to extreme cold, extreme heat, humidity, and other aggravating factors. (AR at 19.)

For assessing Brown's level of mental impairment, the ALJ began his analysis by rating Brown's restrictions in several different areas. The ALJ found that Brown had "mild" impairment in activities of daily living, "moderate" impairment in social functioning, and "moderate" impairment with maintaining concentration, persistence, or pace. (AR at 20.) The ALJ also determined that Brown had one episode of deterioration or decompensation not of extended duration and not in a work or work-like setting. (AR at 20.) The ALJ based these findings on credibility determinations and Brown's testimony regarding her daily activities. (AR at 20.)

After this analysis, the ALJ concluded that Brown had the residual functional capacity to perform light work. (AR at 21.) The ALJ determined that Brown could walk up to two hours in an eight-hour workday and could carry up to 20 pounds occasionally and ten pounds frequently. (AR at 21.) The ALJ also found that Brown should be "limited to simple repetitive tasks." (AR at 21.) Based on this residual functional capacity, the ALJ determined that Brown could perform other work existing in the national economy. Therefore, the ALJ denied Brown's claim for disability benefits. In his decision, the ALJ never discussed or mentioned Brown's exotropia. The decision was later approved by the Appeals Council and has become the final decision of the Commissioner.

Brown filed suit in this Court seeking review of the Commissioner's decision. Brown argues that the ALJ should have considered her exotropia and failed to complete a proper RFC based on her identified mental impairments. In his report and recommendation, the magistrate concluded that the Commissioner's decision should be reversed and remanded for further evaluation. First, the magistrate determined that the ALJ should have considered Brown's exotropia in his analysis. Second, the magistrate concluded that the ALJ failed to complete a proper RFC based on Brown's identified mental impairments. Although the ALJ correctly classified Brown's impairment as mild, moderate, or severe in various capacities, the magistrate found that the ALJ failed to assess how

these impairments affected Brown's RFC. While noting that the ALJ's determination that Brown should be limited to simple repetitive tasks possibly reflected her moderate impairment in maintaining concentration, persistence, and pace, the magistrate found fault in the ALJ's failure to assess whether Brown's mild impairment in activities of daily living and moderate impairment in social functioning impacted her residual functional capacity. Therefore, the magistrate recommends that the Court remand the matter for an evaluation of Brown's alleged impairment of exotropia and for a re-evaluation of Brown's mental RFC. Defendant objects to both recommendations.

## Analysis

### *Standard of Review*

The Court's review of the Commissioner's decision is limited to whether the Commissioner's findings are supported by substantial evidence. *Howard v. Comm'r of Social Sec.*, 276 F.3d 235, 237 (6th Cir. 2002). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)).

### *Brown's Exotropia*

The Social Security regulations provide that "[a]n ALJ is required to consider impairments a claimant says he has, or about which the ALJ receives evidence." *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (citing 20 C.F.R. § 404.1512(a)). Additionally, "[w]hen an ALJ determines that one or more impairments is severe, the ALJ must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Fisk v. Astrue*, No. 06-4677, 2007 WL 3325869, at * 4 (6th Cir. Nov. 9, 2007) (internal quotation and citation omitted). In this case, it is undisputed that Brown listed exotropia as an impairment in both the Pre-Hearing Statement of Facts and the Hearing Memorandum. Moreover, the ALJ found that Brown's

impairments of asthma and depression were severe. As such, the ALJ was required to consider the impact on Brown's ability to work from all of her impairments, whether severe or not.

Defendant objects that the medical evidence does not demonstrate that Brown's exotropia significantly affects her ability to work. Defendant points to Brown's testimony that she watches movies, works out, and goes bowling as evidence that Brown's exotropia does not interfere with her ability to work. However, this argument ignores one crucial point: it is the ALJ's job to assess Brown's alleged impairments, not the Court. The Court's only job is to review whether the ALJ's findings are supported by substantial evidence. Absent an assessment of the testimony and medical records by the ALJ, this Court cannot properly review the ALJ's determinations. The medical evidence reveals that Brown's exotropia was of sufficient severity to require surgery and that surgery may not have completely resolved the condition. As such, it was incumbent upon the ALJ to assess the evidence of Brown's exotropia and determine whether, and to what extent, it impacts her functional capacity.

Defendant also objects that remand should not be required because Brown never mentioned her exotropia during the hearing. In *Cranfield v. Comm'r of Soc. Sec.*, 79 Fed.App'x 852 (6th Cir. 2003), the Sixth Circuit assessed a similar situation: a claimant challenged the ALJ's ruling because the ALJ did not analyze her obesity as a possible impairment. *Id.* at 857. The Sixth Circuit upheld the ALJ's ruling because neither the claimant "nor her doctors offered any evidence to suggest that her weight was a significant impairment." *Id.* Additionally, because the plaintiff's "claims did not indicate that obesity was a significant impairment, the ALJ was not required to give the issue any more attention than he did." *Id.* The present case is distinguishable from *Cranfield* in two important respects. First, Brown identified exotropia as a severe impairment in both the Pre-Hearing Statement of Facts and the Hearing Memorandum. Second, Brown presented medical evidence

- 5 -

(albeit not in the form of testimony at the hearing) that she suffered from exotropia at one time in the past and that it may be recurring. In light of this, it was the ALJ's responsibility to consider Brown's exotropia in making his determination. Because the ALJ failed to do so, the Court agrees with the magistrate that the matter should be remanded to the Commissioner for an evaluation of Brown's alleged impairment of exotropia.

*Mental RFC*

Defendant's next objection to the magistrate's report and recommendation is that the ALJ properly analyzed Brown's alleged impairment of depression. When a claimant alleges a mental impairment, the regulations specify a "special technique" for the ALJ to use to evaluate the claimant's level of impairment. First, the ALJ must determine whether the claimant has a medically determinable impairment. 20 C.F.R. § 416.920a(b)(1). If the claimant has a medically determinable impairment, the ALJ must rate the degree of limitation from the impairment in four functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 416.920a(c)(3). After analyzing the extent of the limitations, the ALJ must determine whether the impairment is "severe" and whether "it meets or is equivalent in severity to a listed mental disorder." 20 C.F.R. § 416.920a(d)(1)-(2). If the mental impairment is severe but does not meet or is not equivalent in severity to a listed mental disorder, the ALJ must assess the claimants residual functional capacity. 20 C.F.R. § 416.920a(d)(3).

Neither party disputes that the ALJ properly completed the first three requirements by determining that Brown does have a medically determinable mental impairment, rating her functional limitations in the four separate areas, and concluding that Brown's mental impairment was severe but did not meet nor was equivalent in severity to a listed mental disorder. However, Brown claims that the ALJ failed to fulfill his responsibility under the last step of the analysis to

assess her residual functional capacity in light of the limitations imposed by her mental impairment. Primarily, Brown argues that the ALJ did nothing more than agree with Dr. Mohiuddin's RFC based on her physical impairments while simply adding the non-exertional limitation that she should be limited to simple repetitive tasks. The magistrate concluded, and the Court agrees, that while this limitation may reflect her moderate impairment in maintaining concentration, persistence, or pace, the ALJ never mentioned if, and to what extent, her mild impairment in activities of daily living and moderate impairment in social functioning also impact Brown's RFC.

Defendant objects that the ALJ sufficiently outlined his reasoning in assessing Brown's level of mental impairment and linking that level of impairment to Brown's RFC. Defendant argues that the ALJ determined Brown's level of impairment based on Brown's own testimony regarding her daily activities and interactions and that none of that testimony established work-related limitations. However, the ALJ did not err in rating Brown's level of impairment in the four functional areas; rather, he erred once he determined Brown's level of impairment by failing to explain whether, and to what extent, those impairments impose any work-related restrictions. It may be, as Defendant argues, that Brown's mild impairment in activities of daily living and moderate impairment in social functioning do not impose any work-related restrictions or otherwise impact Brown's RFC. Absent an analysis from the ALJ determining that to be the case, however, the Court is unable to conduct its review function. Because the ALJ failed to explain whether, and to what extent, Brown's mental impairment in four functional areas impact her RFC, the Court agrees with the magistrate that the matter should be remanded to the Commissioner for a re-evaluation of Brown's mental RFC.

## Conclusion

For the reasons set forth above,

**IT IS HEREBY ORDERED** that the Magistrate's Report and Recommendation (docket no. 14) is **APPROVED AND ADOPTED** as the Opinion of the Court.

**IT IS HEREBY FURTHER ORDERED** that the Commissioner's decision is **REVERSED AND REMANDED** pursuant to sentence four of U.S.C. § 405.

**This case is concluded**.


Dated:  March 26, 2008 /s/ Gordon J. Quist
GORDON J. QUIST
UNITED STATES DISTRICT JUDGE